# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
### BEAUMONT DIVISION

| | | |
|---|---|---|
| VANESSA A. FISHER, | : | |
| | : | |
| Plaintiff, | : | |
| | : | CASE NO. 1:04-CV-297 |
| v. | : | |
| | : | JUDGE RON CLARK |
| SISTERS OF CHARITY OF THE | : | |
| INCARNATE WORD, a/k/a AND d/b/a | : | |
| CHRISTUS ST. MARY'S HOSPITAL, | : | |
| | : | |
| Defendant. | : | |

## ORDER AND MEMORANDUM ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Before the Court is Defendant Christus St. Mary's Hospital's Motion for Summary Judgment [Doc. # 22]. Upon review of the memoranda, the record and the applicable law, the Court finds that Defendant Christus St. Mary's Hospital (Christus) has not shown that it is entitled to summary judgment on Plaintiff's claims of retaliation and gender discrimination. However, Christus has presented evidence to establish that Plaintiff's claim of age discrimination fail as a matter of law. Accordingly, Christus' Motion for Summary Judgment **[Doc. # 22]** is **DENIED, in part** and **GRANTED, in part** as set forth below.

## I.  BACKGROUND

Plaintiff Vanessa Fisher ("Fisher") has worked at Christus for approximately sixteen years, she eventually became the Clinical Coordinator of the respiratory department around 1997. Fisher worked in her capacity as Clinical Coordinator until October 2001.

In the August 2001, Fisher authored an anonymous letter complaining about her immediate supervisor stating, in relevant part, "Craig [Cooksey] is overcome with talking about sex. No one cares to hear about his sex life. We are offended and insulted by his unprofessional behavior."

Fisher revealed her identity as the author of this complaint to Mr. Greg Firestone while he was conducting the investigation on Mr. Cooksey shortly after the anonymous letter was presented to hospital management.  On October 31, 2001, during a meeting with Mr. Firestone, Fisher was notified both that Mr. Cooksey would no longer be working at the hospital and that her position would be eliminated due to a reorganization.

At some point after the October 31st meeting, a new department supervisor position was posted.  Plaintiff discussed the opportunity with Mr. Firestone who indicated that she should not apply for the position because he was looking for a man to fill the position.[1]  Plaintiff applied for the new supervisory position and was granted an interview by a panel that included Mr. Firestone, Ms. Handel, and Ms. Bailey.  According to Plaintiff, the public posting for the new supervisory position was marked as filled on November 22, 2001, approximately five days prior[2] to her interview with the three person panel.  It was ultimately announced that Mr. Norman Murphy was awarded the supervisory position that Plaintiff sought in the respiratory department.

On December 12, 2001, Plaintiff filed a complaint with the EEOC stating that she was discriminated against because of her sex and was the victim of retaliation.  The complaint Plaintiff filled out indicated that the discrimination took place from October 31, 2001 until December 10, 2001.  Plaintiff checked the boxes on the form for sex discrimination and retaliation.  The box indicating age as a cause of the discrimination was left unmarked.  The EEOC ultimately found in favor of Plaintiff and issued a determination letter on October 15, 2002 concluding that Plaintiff

---

[1]This point is disputed, however, for summary judgment purposes, the court must take the facts in the light most favorable to Plaintiff, the non-moving party.  Further, Mr. Firestone does admit that he stated, "Yes, I want a man – I want Norman."  *See* Def.'s Reply, Ex. 1, Firestone's Dep. at 74:8 - 10.  This lends credibility to Plaintiff's account of the conversations surrounding her application for promotion.

[2]Plaintiff submitted an affidavit suggesting that the posting was actually marked "filled" approximately two weeks prior to her interview.  However, the documented evidence supporting the allegation indicates that the posting was marked "filled" on November 22, 2001.  *See* Pl.'s Resp., Exs. A & I.

"was demoted and denied a promotion to Supervisor of Respiratory Care in retaliation [for] her complaint of perceived discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended." *See* Pl.'s Resp., Ex. E, 10/15/02 Determination Letter.  The parties were invited by the EEOC to reach a settlement or the EEOC would advise the parties of the court enforcement alternatives available.  Obviously, the parties were not able to reach a settlement, and after receiving a right to sue letter, Plaintiff filed suit in this court on May 12, 2004.

As Plaintiff and Defendant were presumably discussing settlement options, Plaintiff alleges that on April 2, 2004, she was singled out for a violation of hospital policy for leaving her computer screen unattended, leaving privacy sensitive data on display.  Defendant also believed that Plaintiff accessed a patient's medical records without authorization.  Plaintiff received a "Counseling Memorandum" and was given a verbal warning regarding when to log off and turn off her computer. *See* Def.'s Mot. for Summ. J., Ex. 6.  Less than three weeks later, Plaintiff received another "Counseling Memorandum" and was given a suspension without pay for two working days for "releasing" a child's private information without a written authorization from the parent. *See* Def.'s Mot. for Summ. J., Ex. 7.  Plaintiff contests the motive for her suspension, since she did not release any information without parental authorization, but rather presented her immediate supervisor with a draft letter describing the child's condition in preparation for the release authorization Plaintiff was expecting.  Plaintiff filed a claim with the TCHR on August 16, 2004 charging that the two day suspension was in retaliation for her previously filed claim with the EEOC and done to intimidate her from filing a suit in Federal Court after receiving her Right to Sue letter. *See* Def.'s Mot. for Summ. J., Ex. 8.

## II.  SUMMARY JUDGMENT STANDARD

The party moving for summary judgment under Fed. R. Civ. P. 56 has the initial burden of demonstrating that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S. Ct. 2505, 2514 (1986).  Movant may show that the undisputed material facts affirmatively establish a right to judgment.  Alternatively, movant may establish that the other party has the burden of proof at trial, and has failed to "make a showing sufficient to establish the existence of an element essential to [its] case." *Nebraska v. Wyoming*, 507 U.S. 584, 590, 113 S. Ct. 1689 (1993), (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2522 (1986)).    In order to avoid summary judgment, the  party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86, 106 S. Ct. 1348, 1335  (1986); *Anderson*, 477 U.S. at 257, 106 S. Ct. at 2514.  The nonmoving party  "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S. Ct. at 1356.   Fed. R. Civ.  P. 56 requires that the nonmoving party set forth specific facts showing that there is a genuine issue for trial.  *Anderson,* 477 U.S. at 256, 106 S. Ct. at 2514.  Only a genuine dispute over a material fact (a fact which might affect the outcome of the suit under the governing substantive law) will preclude summary judgment. *Anderson*,  477 U.S. at 248, 106 S. Ct. at 2510.  The dispute is genuine if the evidence is such that a  reasonable jury could return a verdict for the nonmoving party on the issue. *Id.*  If the factual context renders a claim implausible (for example if the claim simply makes no economic sense)  nonmovants "must come forward with more persuasive evidence to support their claim than would otherwise be necessary. *Matsushita*, 475 U.S. at 587, 106 S. Ct. at 1356.

Fed. R. Civ. P. 56(c) requires the court to look at the full record, including the pleadings, depositions, answers to interrogatories, admissions, and affidavits.  All reasonable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion, and any doubt must be resolved in its favor.  *Matsushita*, 475 U.S. at 587, 106 S. Ct. at 1356.  However, only *reasonable* inferences in favor of the nonmoving party can be drawn from the evidence.  *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 468, 112 S. Ct. 2072, 2083 (1992).

## III.  DISCUSSION

### A. Exhaustion of Administrative Remedies - Plaintiff's claim of Age Discrimination

A Title VII plaintiff has 300 days from the date of the alleged discriminatory action to file a charge with the EEOC.  42 U.S.C. § 2000e-5(e)(1); *Huckabay v. Moore*, 142 F.3d 233, 238 (5th Cir. 1998).  The limitations period set out in 42 U.S.C. § 2000e-5(e)(1) has the effect of a statute of limitations.  *Zipes v. Trans World Airlines*, 455 U.S. 385, 393 (1982).  A plaintiff's claim is time-barred if not filed with the EEOC within the 300 days.  *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109, 122 S.Ct. 2061, 2070 (2002).  After a claim has been properly and timely filed with the EEOC, a plaintiff must file suit within two years or be barred by the statute of limitations. 42 U.S.C. § 2000e-5(g).

Here, Plaintiff has not made any mention to the EEOC or Defendant that she claimed age discrimination prior to her filed complaint of May 12, 2004.  Accordingly, Defendant's Motion for Summary Judgment on Plaintiff's claim of age discrimination is granted.

### B. Gender Discrimination

Summary judgment is not favored in claims of employment discrimination, but is proper when there is no genuine issue as to any material fact.  *Waggoner v. City of Garland*, 987 F.2d 1160,

1164 (5th Cir. 1993).  Particularly in Title VII cases, courts must refrain from engaging in the jury functions of making credibility determinations, weighing evidence, or drawing legitimate inferences from the facts.  *Olsen v. H.E.B. Pantry Foods*, 196 F. Supp. 2d 436, 438 (E.D. Tex. 2002).

To prove up her claim of gender discrimination, Plaintiff must satisfy the burden shifting test found, most recently, in *Reeves v. Sanderson Plumbing Prods. Inc.,* 530 U.S. 133, 120 S. Ct. 2097 (2000).  Under that test, Plaintiff must first establish her *prima facie* case of discrimination.  If she does, Defendant must respond with a legitimate non-discriminatory reasons for its actions.  At that point, Plaintiff must present evidence that demonstrates a genuine issue of material fact as to whether the legitimate reason offered by the Defendant was not its true reason, but instead a pretext for discrimination.  *See Reeves,* 530 U.S. at 142; *Okoye v. The University of Texas Houston Health Science Center,* 245 F.3d 507, 512 (5th Cir. 2001).

In order to prove her prima facie case, Plaintiff must show that she 1) is a member of a protected class; 2) was qualified for her position; 3) was subjected to an adverse employment action; and 4) was replaced by someone outside the protected class, or that other similarly persons were treated more favorably.  *See Okoye,* 245 F.3d at 512-13.  Here, Plaintiff has demonstrated that she: is a member of a protected class; was qualified for the supervisory position in the respiratory department; was denied the promotion; and the promotion was awarded to a man, Mr. Norman Murphy, who is outside the protected class.

Defendant states that its legitimate non-discriminatory reason for promoting Mr. Murphy over Plaintiff is that he was more qualified and was chosen by a neutral three person panel.  To demonstrate that there is a genuine issue of material fact as to whether the reasons offered are true, Plaintiff points to evidence that 1) Mr. Firestone discouraged her from applying because he wanted to hire a man; 2) the job posting was marked filled prior to Plaintiff's interview with the three person

panel; 3) that people, including the two woman on the three person interviewing panel, were directed to write a statement supporting Defendant's decision to hire Mr. Murphy as supervisor even when such statements were not typically requested to justify other promotions.

Given this evidence, the court finds that Plaintiff has provided sufficient evidence to raise a genuine issue of material fact regarding Defendant's legitimate, non-discriminatory reasons for failing to promote Plaintiff to the supervisory position.  A reasonable jury could conclude that the three person panel was not neutral, but instead controlled by Mr. Firestone who had already decided to fill the position with a man.  The decision depends on the weight given to the various pieces of evidence offered, and witness credibility, and is not a matter that this court should resolve as a matter of law at the summary judgment stage.

C. Retaliation

Plaintiff claims that her mid-management position was eliminated and she was not selected for a promotion in retaliation for the letter she authored complaining about the sexual harassment of her immediate supervisor, Mr. Craig Cooksey.  To establish a *prima facie* retaliation claim, Plaintiff must show she that 1) engaged in a protected activity, 2) suffered an adverse employment action, and 3) there was a causal link between the protected activity and the adverse employment action.  *Cain v. Blackwell*, 246 F.3d 758, 761 (5th Cir. 2001).  The burden-shifting analysis that applies in a Title VII disparate treatment action also applies to a claim of unlawful retaliation based on circumstantial evidence.  *Long v. Eastfield College*, 88 F.3d 300, 304 (5th Cir. 1996).  Therefore, once a *prima facie* case is established, a presumption of discrimination arises which the defendant must refute by articulating a legitimate, nondiscriminatory reason for the adverse employment action.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824 (1973).  If Defendant can produce a legitimate reason for the action, the *prima facie* inference of discrimination is

removed. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510-11, 113 S. Ct. 2742, 2749 (1993). The burden is then on Plaintiff to present evidence that the Title VII protected activity was a "but for" cause of the adverse employment action. *Seaman v. CSPH, Inc.*, 179 F.3d 297, 301 (5th Cir. 1999). If Plaintiff provides evidence that the reasons given by the employer for the adverse employment action were pretextual, a jury may infer the existence of retaliation. *Mota v. Univ. of Tex. Houston Health Sci. Ctr.*, 261 F.3d 512, 519-520 (5th Cir. 2001). Defendant would thus be entitled to summary judgment only if it can show that the evidence, as a whole, would not permit a reasonable factfinder to infer that the true reason Plaintiff's position was eliminated and she was later not promoted was discriminatory retaliation. *Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 994 (5th Cir. 1996).

Here, taking the facts in the light most favorable to Plaintiff as required for summary judgment purposes, her authorship of the letter complaining about Mr. Cooksey's sexual harassment practices at the work place, constituted a protected activity. Plaintiff alleges she notified Mr. Firestone that she authored the letter during his investigations into the allegations lodged against Mr. Cooksey in the letter. Further, there is no dispute that a demotion and a failure to promote would constitute adverse employment actions. *Burlington Indus. Inc. v. Ellerth*, 524 U.S. 742, 761, 118 S. Ct. 2257, 2268 (1998).

Thus, to prove her prima facie case of retaliation, Plaintiff need only show a causal link between the letter complaining about Mr. Cooksey and her demotion and lost promotion. The causal link is broken if the officials with final authority to demote or not promote an employee conducts an "independent investigation" in the course of reaching his or her decision. *Mato v. Baldauf*, 267 F.3d 444, 450 (5th Cir. 2001). But the link is not broken where the decision-makers only "rubber-stamps" the recommendations of the subordinate with motivation to retaliate. *Id.*

Because Plaintiff is the non-movant, "all of [her] evidence is to be believed, and all justifiable inferences are to be drawn in [her] favor." *Anderson*, 477 U.S. at 255.  According to Plaintiff's sworn testimony, on October 31, 2001, Mr. Firestone told her that Mr. Cooksey was going to resign, that the department was going to be restructured, and as a result she would be demoted.  Plaintiff also testified that Mr. Firestone and Mr. Cooksey were friends and that Mr. Firestone was angry about Mr. Cooksey's resignation.  Plaintiff further testified that Mr. Firestone advised her not to apply for a newly created supervisory position because he wanted a man for the job.  Plaintiff asserts that Mr. Firestone was primarily responsible for the selection of Mr. Murphy for the promotion and the remaining two members on the selection panel were merely "window dressing."

Defendant claims that Plaintiff's demotion was a result of a reorganization effort and not the desire of Mr. Firestone to retaliate against Plaintiff for Mr. Cooksey's forced resignation.  Defendant also claims that Mr. Murphy, the man who was awarded to promotion to the newly created supervisory position, was better qualified and selected by a neutral three person panel.  However, Defendant fails to provide sufficient evidence to support the claims of reorganization planning, or past use of three member interviewing panels, or of Mr.  Murphy's clearly superior qualifications, to overcome Plaintiff's version of the facts.  Thus, a genuine issue of material fact remains regarding Defendant's motivation for demoting Plaintiff and later failing to promote her to the newly created supervisory position.  Plaintiff has presented sufficient evidence, for purposes of summary judgment, that no impartial decision-maker made a truly independent investigation.  Further, Plaintiff has also provided some evidence of retaliatory bias with her testimony.  Therefore, she has provided evidence that may permit a jury to infer that her demotion and lack of promotion were retaliatory actions.

Plaintiff also claims that her two day suspension charged against her on April 22, 2004 was actually peremptory retaliation to discourage her from filing federal suit pursuant to her recently

received Right to Sue letter stemming from her December 15, 2001 EEOC claim of discrimination. Defendant claims the suspension was given based on Plaintiff's "intention to release protected health information without obtaining written consent" and further asserts that Plaintiff has failed to exhaust her administrative remedies with this particular claim of retaliation.   When claiming retaliation, "it is unnecessary for a plaintiff to exhaust administrative remedies prior to urging a retaliation claim growing out of an earlier charge," which is itself properly before the Court.   *Gupta v. East Texas State University*, 654 F.2d 414 (5th Cir. 1981).   Here, the court finds that Plaintiff's claim of retaliation in April 2004 must necessarily stem from her earlier 2001 charge and is properly part of this law suit.

Defendant cannot, as a matter of law, show that it is entitled to summary judgment on Plaintiff's three retaliation claims.   Whether Plaintiff's testimony of retaliatory bias is credible when measured against Defendant's justification for its actions is a question for the fact finder.   As such, Defendant's request for summary judgment on Plaintiff's claim of retaliation must be denied.

## IV.  CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant Christus St. Mary's Hospital's Motion for Summary Judgment **[Doc. #22]** is hereby **GRANTED, in part and DENIED, in part**.

So **ORDERED** and **SIGNED** this **11** day of **July, 2005.**

_____
Ron Clark, United States District Judge